IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02668-RBJ-CBS

THOMAS JAMES HARRELL,
Plaintiff,
v.

C/O S. DANIEL, and
LT. T. VIALPANDO,[1]
Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendants' "Motion for Summary Judgment" (filed June 30, 2011) (Doc. # 28). Pursuant to the Order of Reference dated November 17, 2010 (Doc. # 6) and the memorandum dated November 23, 2011 (Doc. # 47), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Harrell's Response (filed December 5, 2011) (Doc. # 51), Defendants' Reply (filed December 7, 2011) (Doc. # 52), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I. Statement of the Case

Mr. Harrell is currently incarcerated at the Hazelton United States Penitentiary ("USP Hazelton") in Bruceton Mills, West Virginia. (*See* Federal Bureau of Prisons Inmate Locator, www.bop.gov). At all times relevant to the claims in this case, Mr. Harrell was incarcerated in the United States Penitentiary in Florence, Colorado ("USP Florence"). (*See* Deposition of Thomas J. Harrell, Exhibit A to Motion (Doc. # 28-1) at 8 of 89). Mr. Harrell brings two claims in the Complaint (Doc. # 3) pursuant to *Bivens v. Six Unknown*

---

[1] This Defendant's name is spelled as both "Vialpando" and "Viaplando" throughout the record.

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), in violation of his Eighth Amendment right "against 'cruel and unusual punishment.'" (*See* Doc. # 3 at 3-5 of 15). In Claim One, Mr. Harrell alleges that Defendant Daniel "applied nondeadly and/or unnecessary force upon my wrists with his hands while I was restrained in handcuffs in the Holding Tank . . . ." (*See* Doc. # 3 at 4-5 of 15). In Claim Two, Mr. Harrell alleges that Defendant Vialpando "saw my wrists; however, he denied me medical assessment," (*See id.* at 5 of 15).[2] Mr. Harrell seeks "temporary injunction, transfer," "money damages," and "'punitive damages." (*See* Doc. # 3 at 8 of 15).

On October 23, 2009, the date of the events alleged in his claims, Mr. Harrell was housed in a single cell in the Special Housing Unit ("SHU") of USP Florence. (*See* Doc. # 28-1 at 15-16 of 89). At approximately 3:00 p.m., correctional officers conducted a search of Mr. Harrell's cell. (*See id.* at 16-17 of 89). The search was prompted when correctional officers smelled smoke near Mr. Harrell's cell. (*See* Doc. # 28-1 at 17 of 89). Mr. Harrell also smelled smoke in the area. (*See id.* at 39 of 89).

Prior to the search of Mr. Harrell's cell, he was escorted to the "holding tank at C-1 range" of the SHU. (*See* Doc. # 28-1 at 18 of 89). Prior to escorting him to the holding cell, Defendant Daniel ordered Mr. Harrell to "cuff up." (*See id.* at 19 of 89). To "cuff up" meant for Mr. Harrell "to put [his] hands behind [his] back and submit to handcuffs" by placing his hands through a trap door. (*See* Doc. # 28-1 at 19-20 of 89). After he was handcuffed, Mr. Harrell was escorted to the holding tank. (*See id.*). Mr. Harrell does not allege that any unnecessary or excessive force was used prior to entering the holding tank. (*See* Doc. # 28-1 at 22 of 89 ("the force didn't come until I got inside the holding tank.")). After entering the holding tank, Mr. Harrell engaged in a similar procedure for his handcuffs to be removed. (*See* Doc. # 28-1 at 23 of 89). To "de-cuff," Mr. Harrell put his "hands out

[2] On September 1, 2011, the court interpreted Mr. Harrell's "Motion for Jury Trial" (Doc. # 29) as a jury demand pursuant to Fed. R. Civ. P. 38 and granted Mr. Harrell's Motion. (*See* Doc. # 34).

under the trap door and [Defendant Daniel] is supposed to uncuff" him. (*See id.*). The trap door was approximately five or six inches wide and a foot long. (*See id.* at 29-30, 45 of 89). At that point, Defendant Daniel "started applying force on my wrists." (*See* Doc. # 28-1 at 21 of 89). Mr. Harrell alleges that after he placed his handcuffed wrists through the trapdoor, Defendant Daniel "started applying pressure with his hands on my wrists, . . . bending my wrists." (*See* Doc # 28-1 at 29, 32, of 89). When Mr. Harrell "tried to pull away," Defendant Daniel tried to pull his hands back through the trapdoor. (*See* Doc. # 28-1 at 32 of 89). This incident occurred for approximately one minute. (*See id.* at 29, 34 of 89). Once the handcuffs were removed, Defendant Daniel used no further force. (*See* Doc. # 28-1 at 34-35 of 89). This incident is the complete basis for Mr. Harrell's excessive force claim against Defendant Daniel.

Defendant Daniel called Defendant Vialpando over and Defendant Vialpando "immediately came up," outside the door of the holding tank. (*See* Doc. # 28-1 at 23, 25, 34 of 89). Upon Defendant Vialpando's arrival, Mr. Harrell's handcuffs were removed. (*See id.* at 34, 35, 36 of 89). Mr. Harrell alleges that after his handcuffs were removed, he showed Defendant Vialpando his wrists and requested to see a nurse. (*See* Doc. # 28-1 at 34-35, 37 of 89). Mr. Harrell held up his wrists to show to Defendant Vialpando, "said 'look what he did to my wrists,'" and "request[ed] to see the nurse." (*See id.* at 37 of 89). Mr. Harrell alleges that his wrists were red and swollen at that time. (*See* Doc. # 28-1 at 38 of 89). He was not bleeding. (*See id.* at 38 of 89). Mr. Harrell alleges that Defendant Vialpando "just stood there" for "[n]o more than a minute" and then turned around and walked away. (*See* Doc. # 28-1 at 37-39 of 89).

After this request, Mr. Harrell did not again ask for medical assessment or treatment of his wrists. (*See* Doc. # 28-1 at 44-45, 58-59 of 89). The next morning, when he saw the nurse who delivered his daily medication, Mr. Harrell did not mention any injury to his wrists. (*See* Doc. # 28-1 at 45 of 89). Mr. Harrell knew that he could "put in a sick call"

when he wanted to see medical personnel. (*See id.* at 57-58 of 89). Mr. Harrell does not recall putting in any sick call about his wrists. (*See* Doc. # 28-1 at 45, 57 of 89).

## II. Standard of Review

Defendants Daniel and Vialpando move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that Mr. Harrell fails to demonstrate a deprivation of his Eighth Amendment rights and, in the alternative, that they are entitled to qualified immunity from Mr. Harrell's claims.

> Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A dispute is "genuine" if the issue could be resolved in favor of either party. A fact is "material" if it might reasonably affect the outcome of the case.
>
> A movant who does not have the burden of proof at trial must show the absence of a genuine fact issue. By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. All the evidence must be viewed in the light most favorable to the party opposing the motion. However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180, 1182-83 (D. Colo. 2004) (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the Complaint has been sworn to under penalty of perjury (*see* Doc. # 3 at 8 of 15), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a

party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988). Defendants move for summary judgment and submit evidence pertaining to Mr. Harrell's claims. As Defendants' Motion is properly supported, the burden shifts to Mr. Harrell to show, by tendering competent evidence, that summary judgment is not proper. The court must determine whether Mr. Harrell has met his burden of presenting specific facts to overcome Defendants' Motion.

## III. Analysis

### A. Claims against Defendants in their Individual vs. Official Capacities

Mr. Harrell does not specify whether he is suing Defendants in their official capacities, their individual capacities, or both. In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001). "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity." *Malesko*, 534 U.S. at 72. "The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or

the BOP." *Malesko*, 534 U.S. at 72. *See also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity"); *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) ("a *Bivens* claim cannot be brought against the BOP, as a federal agency, or the other defendants in their official capacities") (citation omitted), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a federal defendant in his official capacity is treated as a claim against the United States). Sovereign immunity would bar any *Bivens* claim against Defendants in their official capacities. The court thus proceeds to evaluate Mr. Harrell's claims for violation of his Eighth Amendment rights only against the individual Defendants in their individual capacities pursuant to *Bivens*, 403 U.S. at 388.[3]

B. Eighth Amendment

"To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citing *Bivens,* 403 U.S. at 388). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. "[T]he treatment a prisoner receives in prison . . . [is] subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington v.*

[3] Mr. Harrell does not allege a basis for waiver of sovereign immunity for injunctive or mandamus relief. *See Simmat*, 413 F.3d at 1233-36.

*Jackson*, 973 F.2d 1518, 1523 (10th Cir 1992) ("excessive force claims brought by convicted prisoners fall under the rubric of the Eighth Amendment's prohibition against cruel and unusual punishment . . . ").

The Eighth Amendment also prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted). An Eighth Amendment claim may arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

1. Excessive Force Claim

Mr. Harrell's claim against Defendant Daniel for excessive force is based on a minute-long period when he pulled down on Mr. Harrell's wrists from the other side of the trap door while removing his handcuffs. Mr. Harrell's argument in opposition to the Motion for Summary Judgment is that the force used to remove his handcuffs through the trapdoor was "unnecessary force." (*See* Doc. # 51 at 2 of 3). The pivotal inquiry in an excessive use of force claim is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *Despain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). An excessive force claim under the Eighth Amendment "involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212

(10th Cir. 2003). As to the objective element, "*de minimis* uses of physical force are excluded from the cruel and unusual punishment inquiry unless 'repugnant to the conscience of mankind.'" *Ali v. Dinwiddie*, 437 F. App'x 695, 700 (10th Cir. Aug. 26, 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).[4] "The subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Smith*, 339 F.3d at 1212 (internal quotation marks and citations omitted). Mr. Harrell establishes neither element of his excessive force claim.

First, the evidence shows that Defendant Daniel did not use more than *de minimis* force when he pulled down on Mr. Harrell's wrists from the other side of the trap door while removing his handcuffs. The evidence before the court shows that the force used to remove Mr. Harrell's handcuffs was too *de minimis* to constitute an Eighth Amendment violation. *See Cicio v. Kourofsky*, 2010 WL 5138546, at *1 (N.D.N.Y. 2010) (finding that pulling "[plaintiff] towards his cell door using a retention strap and forc[ing] his hands through the slot in order to remove [his] handcuffs" was not excessive force); *Benitez v. Ham*, 2009 WL 3486379, at * 16 (N.D.N.Y. Oct. 21, 2009) (holding that refusing to remove restraints around an inmate's wrists after knowing that it was causing the inmate "'extreme pain' and 'severe swelling'" was not "repugnant to the conscience of mankind"); *Armstead v. Braxton*, 2006 WL 1344061, at *4 (W.D. Va. Apr. 18, 2006) (finding that jerking of "leash" attached to inmate's handcuffs while removing inmate's restraints, causing inmate's hands to hit the cell door, "was not such an extreme use of force to be considered 'repugnant to the conscience of mankind.'").

Next, the evidence demonstrates at most a *de minimis* injury associated with this claim. The nature of the injuries is only one factor in the determination of whether the use of excessive force constituted an Eighth Amendment violation. *See Wilkins v. Gaddy*, 130

---

[4] Copies of unpublished cases cited are attached to this Recommendation.

S.Ct. 1175, 1178 (2010) ("This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry.") (quoting *Hudson*, 503 U.S. at 7 ("absence of a significant injury is therefore relevant to the Eighth Amendment inquiry, but does not end it")); *United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006) ("degree of injury may be highly relevant to the determination of the unreasonableness of the force used"); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) ("significant physical injury not required because constitutional inquiry focuses on whether infliction of pain was unnecessary and wanton). Mr. Harrell submits that his wrists were red and swollen until the next morning. It is undisputed that Mr. Harrell did not seek medical treatment after the day of the incident. Mr. Harrell alleges no physical impairment resulting from the events on October 23, 2009. Redness and swelling associated with the use of handcuffs do not arise to the level of an Eighth Amendment violation. *See Perez v. Sisto*, 2010 WL 2880165, at *13 (E.D. Cal. July 21, 2010) ("Even accepting that the handcuffs were too tight and caused him some pain, numbness or other discomfort for up to half an hour or so, plaintiff simply does not raise a genuine issue of material fact as to this specific claim against defendant . . . that rises to the level of an Eighth Amendment violation . . . ."), *report and recommendation adopted as modified by,* 2011 WL 1100122 (E.D. Cal. 2011); *Thomas v. Mail Room Staff*, 2006 WL 213714, at * 4 (W.D. Va. Jan. 10, 2006) (citation omitted) (pulling of arms while removing handcuffs, causing inmate's hands and arms to jerk backwards through the tray slot resulting in a "BIG MARK" and some swelling on his wrist did not present circumstances in which inmate could prevail on an excessive force claim when he suffered only de minimis injury) (emphasis in original); *Williams v. Evers*, 2002 WL 32362653, at * 4 (W.D. Wis. June 10, 2002) ("slight swelling and very minor lacerations on" wrist suggests force used was not more "than necessary under the circumstances"). "[S]ome jostling and even a 'jerk[ing]' of an inmate's arms and hands while removing handcuffs through a narrow tray slot is both reasonable and expected." *Thomas*, 2006 WL

213714, at * 4. The *de minimis* nature of the alleged injury is consistent with the evidence that the force used to remove Mr. Harrell's handcuffs was too *de minimis* to constitute an Eighth Amendment violation.

Third, Mr. Harrell does not present any evidence to show that Defendant Daniel sadistically or maliciously applied force for the purpose of causing harm. Mr. Harrell's own evidence indicates that he pulled away while Defendant Daniel was removing his handcuffs and that Defendant Daniel responded by pulling against his wrists. Based on the undisputed facts, Defendant Daniel could have reasonably concluded that Mr. Harrell's action necessitated this *de minimis* use of force. *See Wilson v. Hall*, 2010 WL 2038907, at * 7 (W.D.Va. May 20, 2010) ("mere fact that [Defendant's] rate of pull on the strap may not have been a 'perfectly measured response' to the situation, however, does not prove that he initiated a pull of that strength with malicious intent to inflict harm on [Plaintiff]"). It is undisputed that once the handcuffs were off, the force ended. Mr. Harrell does not allege or demonstrate that Defendant Daniel acted with a sufficiently culpable state of mind, the second prong of an Eighth Amendment excessive force claim. Under the facts of this case, Defendant Daniel is entitled to summary judgment on Mr. Harrell's excessive force claim.

2. Claim for Denial of Medical Assessment

Mr. Harrell also alleges that Defendant Vialpando denied him medical assessment related to his injury from the pulling down on his wrists while removing his handcuffs through the trap door. Mr. Harrell brings this Eighth Amendment claim based on the allegation that he showed Defendant Vialpando his wrists, "said 'look what he did to my wrists,'" and "request[ed] to see the nurse." (*See id.* at 37 of 89). Defendant Vialpando did not take Mr. Harrell to see the nurse.

An inmate's claim of inadequate medical care amounts to an Eighth Amendment violation if the inmate shows "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." *Estelle*, 429 U.S. at 106. An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations marks and citation omitted). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). For a prison official to be found liable of deliberate indifference under the Eighth Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference.'" *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837).

To the extent a correctional officer is serving as a "gatekeeper" for medical personnel capable of treating an inmate's condition, he or she may be liable under the Eighth Amendment to the extent that they delayed or refused to fulfill that gatekeeper role. *See Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211); *Edmisten v. Werholtz*, 287 F. App'x 728, 733 (10th Cir. Aug. 1, 2008) (Failure to fulfill a gatekeeper role, if proven, satisfies the test for deliberate indifference under the Eighth Amendment.) An Eighth

Amendment claim may arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *Sealock*, 218 F.3d at 1211. The Eighth Amendment may be violated if the professional "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he [or she] delays or refuses to fulfill that . . . role due to deliberate indifference." *Id.*

Mr. Harrell alleges that his wrists were red and swollen until the next morning. Mr. Harrell did not complain to anyone of any pain. He had an opportunity within less than 24 hours to speak with BOP medical staff during medication rounds at his cell, but he did not report any injury. Mr. Harrell knew how to utilize BOP procedures to request medical care, yet did not further seek medical treatment for his wrists. The evidence shows that Mr. Harrell did not suffer a sufficiently serious medical need. *See Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (inmate's alleged injuries of "swollen wrists with some bleeding" caused by handcuffs that were too tight "do not constitute such a 'serious medical need' that any minor delay caused by the defendants in delivering [inmate] to the care of medical personnel could be construed as 'deliberate indifference' "). *See also Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and a swollen cheek do not rise to the level of an objectively serious medical need); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (small cut with some bleeding was not a serious medical need); *Ashford v. Barry*, 737 F. Supp. 1, 3 (D.D.C. 1990) (being kicked in the leg does not establish a serious medical need).

Second, Mr. Harrell fails to adequately demonstrate the subjective component of an Eighth Amendment claim: that Defendant Vialpando acted with deliberate indifference. The entire extent of Mr. Harrell's claim is that he showed Defendant Vialpando his wrists, "said 'look what he did to my wrists,'" and "request[ed] to see the nurse." (*See* Doc. # 28-1 at 37

of 89). The court has concluded that Mr. Harrell does not establish he had a sufficiently serious injury that needed assessment or treatment. Mr. Harrell neither alleges nor establishes that Defendant Vialpando "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted). As Mr. Harrell fails to establish the subjective component of his Eighth Amendment claim summary judgment is properly granted on Mr. Harrell's claim for denial of medical assessment on October 23, 2009.

3. Qualified Immunity

To the extent that Mr. Harrell is suing Defendants in their individual capacities, Defendants raise the defense of qualified immunity. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*.

As the court has concluded in this Recommendation that Mr. Harrell fails to establish any constitutional violation by Defendants Daniel or Vialpando, the court need not reach the "clearly established" prong of qualified immunity to conclude that summary judgment is correctly granted in favor of Defendants. Defendants in their individual capacities are entitled to qualified immunity. *See Wilder*, 490 F .3d at 815 (instructing district court on

remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

C. Conclusion

The evidence, even viewed in the light most favorable to Mr. Harrell, is insufficient to establish all of the elements of his claims. Defendants have qualified immunity and are entitled to summary judgment on the Complaint. Accordingly,

IT IS RECOMMENDED that Defendants' "Motion for Summary Judgment" (filed June 30, 2011) (Doc. # 28) be GRANTED and judgment enter on the Complaint (Doc. # 3) in favor of Defendants and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 27th day of January, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge